FILED

**UNITED STATES DISTRICT COURT** 2016 MAR 21   PM 12: 18
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

|  |  |
|---|---|
| JOHN DICKMAN, Individually, and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. _____ |
| 21st CENTURY ONCOLOGY HOLDINGS, INC. and 21st CENTURY ONCOLOGY, INC. ) ) ) ) | **JURY TRIAL DEMANDED** 2: 16-cv-218-ftm-99MAM |
| Defendants. ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff John Dickman ("Plaintiff"), makes the following allegations based on his personal knowledge, information and belief and the investigation of his counsel regarding the failure of Defendants 21st Century Oncology Holdings, Inc. ("21st Century Holdings" or the "Company") and 21st Century Oncology, Inc. ("21st Century Oncology" and together with 21st Century Holdings, "21st Century") to take adequate security measures to protect his personal confidential information and that of the Class (as defined below), including medical records, from being illegally accessed by an unauthorized third party thereby exposing Plaintiff and members of the Class ("Class Members") to substantial financial and other injury and damage.

## I.    INTRODUCTION

1.      Defendants 21st Century Holdings announced on March 4, 2016, in a press release and an 8-K filed with the Securities and Exchange Commission ("SEC") that it was advised on November 13, 2015, by the Federal Bureau of Investigation (the "FBI") that an unauthorized third party illegally obtained access to patient information provided to and maintained in a database by 21st Century (the "Data Breach").  Specifically, according to the Company's 8-K, the Company determined that the unauthorized third party, or hacker, may have accessed the Database on October 3, 2015, which contained the personal information of some patients. The personal information consists of patients' names, social security numbers, physician names, medical diagnoses and treatment, and insurance information (the "Sensitive Information"). The Company acknowledged in its press release and the 8-K that the Sensitive Information of approximately 2.2 million current and former patients of the Company (the "Exposed Individuals") may have been copied and transferred as a result of the Data Breach.

2.      21st Century failed to take the necessary security precautions that could have protected the Exposed Individuals' data from a cyber-attack.  21st Century used inadequate data security practices that exposed the Exposed Individuals' Sensitive Information to cyber-hackers.

3.      The 21st Century database ("Database") included the types of information that federal and state laws require be protected by certain security measures, and indeed extra security measures, including the data identified as comprising the Sensitive Information, such as patient names, Social Security numbers, health care ID numbers and

insurance information, and perhaps most sensitive, confidential medical records, such as diagnoses and treatments.

4.      Defendants also made assurances and representations to the Exposed Individuals, in person, by mail or on their website, that they were protecting the Sensitive Information and have and would provide the required security in accordance with federal and state laws. However, those assurances and representations were not fulfilled and as a result, the Exposed Individuals' Sensitive Information was accessible by unauthorized third parties.

5.      As a result of the 21st Century Data Breach, Exposed Individuals have been harmed or exposed to harm, the threat of which will continue for years and perhaps, indefinitely. As a result of the exposure of the Sensitive Information, Exposed Individuals, will all, at a minimum, need to spend countless hours to guard against identity theft and forever be concerned about the great harm that may befall them as a victim of the Data Breach.

## II.    PARTIES

6.      At all relevant times, Plaintiff John Dickman resided and continues to reside in Lee County, Florida.  21st Century collected and received Plaintiff Dickman's Sensitive Information and maintained it in its database. Plaintiff Dickman received a letter from 21st Century informing him that his Sensitive Information may have been compromised as a result of the 21st Century Data Breach. Plaintiff Dickman now must engage in stringent monitoring of, among other things, his financial accounts, tax filings, and health insurance

3

claims. As a result of the 21st Century Data Breach, Mr. Dickman has spent hours addressing issues arising from the 21st Century Data Breach.

7.     Defendant 21st Century Holdings is a Delaware corporation with its principal executive offices located at 2270 Colonial Boulevard, Fort Myers, Lee County, Florida. 21st Century is the largest global, physician led provider of integrated cancer care services. As of December 31, 2015, the Company operated 181 treatment centers, including 145 centers in the U.S. across 17 states.

8.     Defendant 21st Century Oncology is a wholly-owned subsidiary of 21st Century Holdings, also with its principal executive offices located at 2270 Colonial Boulevard, Fort Myers, Lee County, Florida.

### III.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in each of the proposed Classes, and at least one member of the Class is a citizen of a state different from Defendants.

10.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in Lee County, Fort Myers, Florida, in this District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in, was directed to, and/or emanated from Lee County, Fort Myers, Florida, in this District.

## IV.  ADDITIONAL SUBSTANTIVE ALLEGATIONS

### A. Defendants' Pattern of Alleged Unlawful Activities

12.    Defendants' Data Breach is not an isolated incident of at least alleged unlawful conduct in the operation of 21st Century Holdings and its subsidiaries.  For example, on December 16, 2015, 21st Century Oncology, LLC, another subsidiary of 21st Century Holdings, entered into a settlement agreement, with, among others, the United States of America, pursuant to which 21st Century Holdings agreed to pay $19.75 million to the federal government and $528,000 in attorneys' fees and costs related to a qui tam action and False Claims Act claims asserted in connection with certain diagnostic testing by the subsidiary.

13.    Then, after the announcement of the Data Breach, 21st Century Holdings announced on March 9, 2016, that 21st Century Oncology had entered into a settlement with the federal government to resolve a "dispute" involving its clinical training in new facility locations for a radiation dose calculation system called GAMMA. The "dispute" involved charges of unlawful activities by 21st Century Oncology relating to the training protocols of certain staff in the utilization of GAMMA. 21st Century Oncology agreed to pay $34.7 million as part of the GAMMA settlement.

### B.      Defendants' Assurances to Patients to Protect Their Sensitive Information

14.    Defendants made assurances to the Exposed Individuals that it would protect their Sensitive Information, including as required by federal and state laws and regulations, including the Health Insurance Portability and Accountability Act ("HIPAA"), in privacy

notices provided to the Exposed Individuals. On information and belief, 21st Century's website made similar assurances regarding its privacy and security policies.

**C.**     **Defendants' Obligations and Duties to Protect Sensitive Information**

15.     As a health care provider, 21st Century collects, receives, and accesses their patients' extensive individually identifiable Sensitive Information, including health record information. These records include information such as individually-identifiable health information pertaining to the individual patient's medical history, diagnosis codes, payment and billing records, test records, dates of service, and such health and treatment information necessary to process health insurance claims.

16.     As such, 21st Century is covered by HIPAA (see 54 C.F.R. § 160.102) and is therefore required to comply with the HIPAA Privacy Rule and Security Rule, 45 CFR Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

17.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." Personally identifiable health information of patients, including names and social security numbers, is protected under HIPAA, even if no specific diagnostic or treatment information is disclosed.

18.     HIPAA requires that Defendants implement appropriate safeguards for the type of information included in the Sensitive Information. Those required safeguards include: (a) implementing policies and procedures to prevent, detect, contain, and correct security violations; (b) protecting against any reasonably anticipated threats or hazards to

the security or integrity of electronic protected health information; and (c) protecting against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *See* 45 CFR § 164.306(a)(1)-(3).

19.    Defendants is also prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for patients', the consumers', personal information is an "unfair practice" in violation of the Federal Trade Commission Act.

20.    Defendants were also required by various state laws and regulations to protect the Exposed Individuals' Sensitive Information, including as described in Count VI, Florida state law.

21.    In addition to their obligations under federal and state laws, Defendants owed a duty to the Exposed Individuals, who entrusted it with Sensitive Information, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Sensitive Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Exposed Individuals to provide adequate and reasonable security, including in accordance with industry standards and requirements, and to ensure that they adequately protected the Sensitive Information of the Exposed Individuals from being accessed by unauthorized third parties.

**D.**     **Defendants' Inadequate Security Allowed For and Was the Cause of the Data Breach**

22.     On March 4, 2016, 21st Century announced of the Exposed Individuals which was held in the 21st Century Database.

23.     21st Century admits that the information accessed by the unauthorized third party that breached the 21st Century Database, had access to personal confidential information about the Exposed Individuals that included the Sensitive Information, specifically names, Social Security numbers, medical diagnoses and treatment, and insurance information. The unauthorized third party cyber-attacker has access to this Sensitive Information for approximately 2.2 million Exposed Individuals.

24.     Exposed Individuals' Sensitive Information was compromised in the 21st Century Data Breach because Defendants violated their assurances and legal obligations to maintain the security of the Sensitive Information that Exposed Individuals entrusted to Defendants.

25.     Despite their assurances and legal obligations, Defendants did not provide reasonable or adequate security for Exposed Individuals' Sensitive Information. As the creator and main operator of the 21st Century Database, 21st Century is responsible for the inadequate data security practices.

26.     Defendants breached their duties to the Exposed Individuals by the conduct alleged herein.

27.     Defendants violated their assurances and representations contained in its privacy and security notices.

28.    Defendants violated their promise to comply with federal and state law to maintain the security of Exposed Individuals' Sensitive Information, such as HIPAA.

29.    Defendants violated the Federal Trade Commission Act by engaging in the "unfair practice" of failing to maintain reasonable and appropriate data security for patients' Sensitive Information.

**E.    The Exposed Individuals Have Suffered and Will Suffer Substantial Harm As a Result of the Data Breach**

30.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

31.    Identity theft victims, particularly those exposed to medical identity theft, must spend countless hours and large amounts of money guarding against or repairing the impact to their credit and reputation and any other fallout from having confidential medical information accessible by unauthorized third parties.

32.    With access to an individual's Sensitive Information, a hacker can cause a multitude of harms to the Exposed Individuals, including depleting bank accounts, obtaining a driver's license or official identification card in a victim's name, using a victim's name and Social Security Number to obtain government benefits, filing a

fraudulent tax return using a victim's information, or even receive medical services and benefits. Further, loss of private and personal health care information can expose a victim to, at a minimum, loss of reputation. Sensitive Information is such a valuable commodity that once the information has been compromised, criminals can trade the information on the "cyber black- market" for years.

33.     The extent of the harm and costs of medical identity theft has been the subject of an annual independent study undertaken by the Ponemon Institute LLC ("Ponemon") over the last several years. The research by Ponemon, sponsored by the Medical Identity Fraud Alliance (MIFA), confirms that medical identity theft is costly and complex to resolve, and therefore it is critical for healthcare providers to take additional steps to assist victims resolve the consequences of the theft and prevent future fraud.

34.     In the Ponemon study released in February 2015 entitled "Fifth Annual Study on Medical Identity Theft", (the "2015 Study"), it was reported that medical identity theft victim incidents had increased 21.7% from the prior year, and that sixty-five percent (65%) of such victims had to pay an average of $13,500 to resolve the resultant crimes.

35.     The 2015 Study further found that only 10 percent (10%) of those in the study reported having achieved complete satisfaction in concluding the incident. Accordingly, those victims were at risk for future theft or errors in healthcare records that could jeopardize medical treatments and diagnoses.

36.     The average time spent by those respondents who successfully resolved their situation was more than 200 hours, working with their insurer or healthcare provider to make sure their personal medical credentials were secure and verifying the accuracy of

their personal health information, medical invoices and claims and electronic health records. Indeed, fifty-nine percent (59%) of the respondents reported that the thief used their information to obtain healthcare services or treatments, and fifty-six percent (56%) reported that their information was used to obtain prescription pharmaceuticals or medical equipment. Forty-five percent (45%) of respondents said that the medical identity theft incident had a negative impact on their reputation, primarily because of embarrassment due to the disclosure of sensitive personal health conditions (89 percent (89%) of those respondents). Thirty-five percent (35%) said the person committing the fraud used up their insurance benefits resulting in denial of valid insurance claims, and 31 percent (31%) reported having lost their health insurance entirely as a result of the medical identity theft. Twenty-nine percent (29%) of the respondents reported that they had to make out-of-pocket payments to their health plan or insurer to restore coverage.

37.     According to the 2015 Study, almost one-half of medical identity theft victims lose their healthcare coverage as a result of the identity theft, almost one-third have their insurance premiums rise, and forty percent (40%) were never able to resolve their identity theft.

38.     The injuries suffered and likely to be suffered by the Exposed Individuals are and will be a direct and proximate result of the 21st Century Data Breach, including:

     a) theft of their personal and financial information;

     b) loss or delay of tax refunds as a result of fraudulently filed tax returns;

c) costs associated with the detection and prevention of identity theft and unauthorized use of their Sensitive Information and financial, business, banking, and other accounts;

d) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the 21st Century Data Breach, including finding fraudulent charges, cancelling credit cards, purchasing credit monitoring and identity theft protection services (beyond the one-year offered by 21st Century), the imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the 21st Century Data Breach;

e) the imminent and certain impending injury flowing from fraud and identify theft posed by their Sensitive Information being placed in the hands of unauthorized third parties;

f) damages to their Sensitive Information entrusted to Defendants for the sole purpose of obtaining health care services from 21st Century;

g) money paid to Defendants for health care services during the period of the 21st Century Data Breach because Plaintiff and Class Members would not have obtained health care services from Defendants had Defendants disclosed that they lacked adequate systems and procedures to reasonably safeguard patients' Sensitive Information; and

h) overpayments to Defendants for health care services purchased, in that a portion of the amount paid by Exposed Individuals to Defendants was for the costs for Defendants to take reasonable and adequate security measures to protect Exposed Individuals' Sensitive Information, which Defendants failed to do.

39.   21st Century acknowledged, in part, the harm caused by the 21st Century Data Breach because it offered Exposed Individuals twelve (12) months of identity theft repair and credit monitoring services. One-year of identity theft repair and credit monitoring is entirely inadequate to protect Exposed Individuals from identity theft risk that will continue well beyond one year, and does not address compensating Plaintiff and Class Members for the injuries they have already suffered.

## V.  CLASS ACTION ALLEGATIONS

### A.    Classes

40.   Pursuant to Fed. R. Civ. P. 23(b) and (c), Plaintiff asserts the claims herein on behalf of the following classes of current and former patients of 21st Century:

**Florida Class:** All residents of the state of Florida whose Sensitive Information was maintained on the 21st Century Database and was compromised as a result of the 21st Century Data Breach (the "Florida Class").

**Nationwide Class:** All residents of the U.S. states in which 21st Century operates whose Sensitive Information was maintained on the 21st Century

Database and was compromised as a result of the 21st Century Data Breach (the "Nationwide Class").

41. Excluded from the Florida Class and the Nationwide Class (collectively the "Classes" or the "Class") are Defendants, any entity in which Defendants have a controlling interest, any entity which has a controlling interest in Defendants, and their respective officers, directors, members, managers, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

## B.  Certification of the Proposed Class is Appropriate

42. Each of the proposed Classes meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

43. *Numerosity:* The exact number of members of the Classes is unknown to Plaintiff at this time but there are at least approximately 2.2 million individuals in all of the Classes combined, making joinder of each individual member impracticable. Ultimately, members of the Classes will be easily identified through Defendants's records.

44. *Commonality and Predominance:* There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include:

a) Whether Defendants failed to adequately safeguard Plaintiff's and the Classes' Sensitive Information;

b) Whether Defendants failed to protect Plaintiff's and the Classes' Sensitive Information, as promised;

c) Whether Defendants' computer system systems and data security practices used to protect Plaintiff's and the Classes' Sensitive Information violated federal, state and local laws, or Defendants' duties;

d) Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Classes' Sensitive Information properly and/or as promised;

e) Whether Defendants violated federal and state consumer protection statutes, data breach and personal privacy statutes, and medical privacy statutes applicable to Plaintiff and each of the Classes;

f) Whether Defendants acted negligently in failing to safeguard Plaintiff's and the Classes' Sensitive Information;

g) Whether implied or express contracts existed between Defendants, on the one hand, and Plaintiff and the members of the each of the Classes, on the other;

h) Whether Defendants' conduct described herein constitutes a breach of their implied or express contracts with Plaintiff and the members of each of the Classes;

i) Whether Defendants should retain the money paid by Plaintiff and members of each of the Classes to protect their Sensitive Information;

j)  Whether Plaintiff and the members of the Classes are entitled to damages as a result of Defendants' wrongful conduct;

k)  Whether Plaintiff and the members of the Classes are entitled to restitution as a result of Defendants' wrongful conduct;

l)  What equitable relief is appropriate to redress Defendants' wrongful conduct; and

m)  What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Classes.

45.     ***Typicality:*** Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and the members of the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with them.

46.     ***Adequacy:*** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

47.     ***Risks of Prosecuting Separate Actions:*** This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendants or would be dispositive of the interests of members of the proposed Classes. Furthermore,

16

the 21st Century Database still exists, and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the 21st Century Database.

48.   ***Defendants' Practices Are Generally Applicable to the Classes:*** This case is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Plaintiff and proposed Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Classes, and making final injunctive relief appropriate with respect to the proposed Classes as a whole. Defendants' practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the proposed Classes as a whole, not on individual facts or law applicable only to Plaintiff.

49.   ***Superiority:*** This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Classes. The injuries suffered by each individual member of the Classes are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct. Absent a class action, it would be virtually impossible for individual members of the Classes to obtain effective relief from Defendants. Even if members of the Classes could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

50.   As a health care provider, Defendants are required to protect patients' Sensitive Information by adopting and implementing the specific data security regulations and standards set forth under HIPAA. In addition to its implied statutory obligation, Defendants specifically promised to safeguard patients' Sensitive Information in accordance with HIPAA regulations and standards through their privacy policy and patient agreements.

51.   However, Defendants breached their statutory and common law obligations and express assurances by maintaining patients' Sensitive Information in an electronic database that lacked adequate security measures and protocols.

**Defendants Violated HIPAA and Industry-Standard Data Protection Protocols**

52.   Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. 1301, el seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Sensitive Information, like the Sensitive Information data left unguarded by Defendants. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

53.   Defendants' Data Breach resulted from the inadequacies of Defendants' data security relating to its patients' Sensitive Information which indicate that Defendants did not comply with safeguards mandated by HIPAA regulations and industry standards. At the very least, Defendants either failed to implement, or inadequately implemented,

information security policies or procedures that protected or otherwise controlled the storage of Sensitive Information on the 21st Century Database. In addition, Defendants' Data Breach could have been prevented if Defendants had honored their obligations to its patients by implementing HIPAA mandated, industry standard policies and procedures for securely maintaining their Sensitive Information.

54.     Defendants' security failures include, but are not limited to, (a) failing to maintain an adequate data security system to prevent unauthorized access to Sensitive Information; (b) failing to ensure the confidentiality and integrity of electronic protected health information they created, received, maintained, and transmitted; (c) failing to implement policies and procedures to prevent, detect, contain, and correct security violations (d) failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information; and (e) failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, all in violation of or not in compliance with HIPAA.

55.     Even though Defendants' patients both expected and paid for the above described security measures as a part of their hospital experience (i.e., that HIPAA mandated and industry standards would be used to protect their Sensitive Information), they were not implemented, which resulted in the unauthorized access of their Sensitive Information.

## COUNT I - NEGLIGENCE
*(On Behalf of Nationwide Class)*

56.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

57.     Defendants required Plaintiff and Members of the Nationwide Class to submit Sensitive Information in order to receive health care services and obtain insurance payments in connection therewith.

58.     Defendants knew, or should have known, of the risks inherent in collecting and storing the Sensitive Information of Plaintiff and Members of the Nationwide Class.

59.     As described above, 21st Century owed duties of care to Plaintiff and Members of the Nationwide Class whose Sensitive Information had been entrusted with 21st Century and was placed in the 21st Century Database due to their dealings with 21st Century.

60.     Defendants breached their duties to Plaintiff and Members of the Nationwide Class by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Nationwide Class' Sensitive Information.

61.     Defendants acted with wanton disregard for the security of Plaintiff and Nationwide Class Members' Sensitive Information. Defendants knew or should have known that they had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the Sensitive Information in health care databases, such as 21st Century's.

62.    A "special relationship" exists between Defendants and the Plaintiff and Members of the Nationwide Class. 21st Century entered into a "special relationship" with the Plaintiff and Class Members whose Sensitive Information was requested, collected, and received by 21st Century, which created and maintained centralized computer systems and data security practices that were used for storage of all of 21st Century patients' Sensitive Information.  Thus, 21st Century also created a "special relationship" with Plaintiff and Members of the Nationwide Class whose Sensitive Information was placed in the 21st Century Database.

63.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Members of the Nationwide Class, Plaintiff and the Members of the Nationwide Class would not have been injured.

64.    The injury and harm suffered and to be suffered by Plaintiff and Members of the Nationwide Class was the reasonably foreseeable result of Defendants' breach of its duties. Defendants knew or should have known that it was failing to meet its duties, and that Defendants' breach would cause Plaintiff and Members of the Nationwide Class to experience the foreseeable harms associated with the exposure of their Sensitive Information.

65.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Members of the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II – BREACH OF FIDUCIARY DUTY
*(On Behalf of the Nationwide Class)*

66.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

67.    As a result of the special relationship which existed between Defendants and the Plaintiff and Members of the Nationwide Class whereby the Sensitive Information of Plaintiff and Members of the Nationwide Class was requested, collected, and received by 21st Century, Defendants owed Plaintiff and Members of the Nationwide Class fiduciary duties, including the duty of care. 21st Century undertook to comply with these fiduciary duties when the Sensitive Information of Plaintiff and Members of the Nationwide Class was placed in the 21st Century Database.

68.    As a result of the Data Breach and Defendants' failure to provide adequate security to protect the Sensitive Information, Defendants breached their fiduciary duties, including the duty of care, owed to Plaintiff and Members of the Nationwide Class.

69.    As a result of Defendants' breach of fiduciary duties owed to Plaintiff and Members of the Nationwide Class, Plaintiff and Members of the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III – UNJUST ENRICHMENT
*(On Behalf of the Nationwide Class)*

70.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

71.     Plaintiff and Nationwide Class Members conferred a monetary benefit on 21st Century in the form of payment for the health care services provided to them by 21st Century.

72.     21st Century appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Nationwide Class Members.

73.     The payment for health services that Plaintiff and Nationwide Class Members paid (directly or indirectly through health insurance) to Defendants were supposed to be used by Defendants, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

74.     As a result of 21st Century's conduct, Plaintiff and Nationwide Class Members suffered actual damages in an amount equal to the difference in value between health care services with the reasonable data privacy and security practices and procedures that Plaintiff and Nationwide Class Members paid for, and the inadequate health care services without reasonable data privacy and security practices and procedures that they received.

75.     Principles of equity demand that 21st Century should not be permitted to retain the money belonging to Plaintiff and Nationwide Class Members because Defendants failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal, state and local laws, and industry standards.

76.     21st Century should be compelled to disgorge into a common fund for the benefit of Plaintiff and Nationwide Class Members all unlawful or inequitable proceeds received by 21st Century.

77.     A constructive trust should be imposed upon all unlawful or inequitable sums received by 21st Century traceable to Plaintiff and Nationwide Class Members.

78.     Plaintiff and Nationwide Class Members have no adequate remedy at law.

### COUNT IV - NEGLIGENCE
*(On Behalf of Florida Class)*

79.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

80.     Defendants     required     Plaintiff     and     Members     of     the Florida Class to submit Sensitive Information in order to receive health care services and obtain insurance payments in connection therewith.

81.     Defendants knew, or should have known, of the risks inherent in collecting and storing the Sensitive Information of Plaintiff and Members of the Florida Class.

82.     As described above, 21st Century owed duties of care to Plaintiff and Members of the Florida Class whose Sensitive Information had been entrusted with 21st Century and was placed in the 21st Century Database due to their dealings with 21st Century.

83.     Defendants breached their duties to Plaintiff and Members of the Florida Class by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Florida Class' Sensitive Information.

84.     Defendants acted with wanton disregard for the security of Plaintiff and Florida Class Members' Sensitive Information. Defendants knew or should have known that they had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the Sensitive Information in health care databases, such as 21st Century's.

85.     A "special relationship" exists between Defendants and the Plaintiff and Members of the Florida Class. 21st Century entered into a "special relationship" with the Plaintiff and Class Members whose Sensitive Information was requested, collected, and received by 21st Century, which created and maintained centralized computer systems and data security practices that were used for storage of all of 21st Century patients' Sensitive Information.  Thus, 21st Century also created a "special relationship" with Plaintiff and Members of the Florida Class whose Sensitive Information was placed in the 21st Century Database.

86.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Members of the Florida Class, Plaintiff and the Members of the Florida Class would not have been injured.

87.     The injury and harm suffered and to be suffered by Plaintiff and Members of the Florida Class was the reasonably foreseeable result of Defendants' breach of its duties. Defendants knew or should have known that it was failing to meet its duties, and that Defendants' breach would cause Plaintiff and Members of the Florida Class to experience the foreseeable harms associated with the exposure of their Sensitive Information.

88.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Members of the Florida Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT V – BREACH OF FIDUCIARY DUTY
### *(On Behalf of the Florida Class)*

89.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

90.     As a result of the special relationship which existed between Defendants and the Plaintiff and Members of the Florida Class whereby the Sensitive Information of Plaintiff and Members of the Florida Class was requested, collected, and received by 21st Century, Defendants owed Plaintiff and Members of the Florida Class fiduciary duties, including the duty of care.  21st Century undertook to comply with these fiduciary duties when the Sensitive Information of Plaintiff and Members of the Florida Class was placed in the 21st Century Database.

91.     As a result of the Data Breach and Defendants' failure to provide adequate security to protect the Sensitive Information, Defendants breached their fiduciary duties, including the duty of care, owed to Plaintiff and Members of the Florida Class.

92.     As a result of Defendants' breach of fiduciary duties owed to Plaintiff and Members of the Florida Class, Plaintiff and Members of the Florida Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT VI – UNJUST ENRICHMENT
### *(On Behalf of the Florida Class)*

93.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 55 as if fully set forth herein.

94.    Plaintiff and Florida Class Members conferred a monetary benefit on 21st Century in the form of payment for the health care services provided to them by 21st Century.

95.    21st Century appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Florida Class Members.

96.    The payment for health services that Plaintiff and Florida Class Members paid (directly or indirectly through health insurance) to Defendants were supposed to be used by Defendants, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

97.    As a result of 21st Century's conduct, Plaintiff and Florida Class Members suffered actual damages in an amount equal to the difference in value between health care services with the reasonable data privacy and security practices and procedures that Plaintiff and Florida Class Members paid for, and the inadequate health care services without reasonable data privacy and security practices and procedures that they received.

98.    Principles of equity demand that 21st Century should not be permitted to retain the money belonging to Plaintiff and Florida Class Members because Defendants failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal, state and local laws, and industry standards.

99.    21st Century should be compelled to disgorge into a common fund for the benefit of Plaintiff and Florida Class Members all unlawful or inequitable proceeds received by 21st Century.

100.    A constructive trust should be imposed upon all unlawful or inequitable sums received by 21st Century traceable to Plaintiff and Florida Class Members.

101.    Plaintiff and Florida Class Members have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, seeks the following relief:

A.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as set forth herein, appointing the undersigned as Class counsel, and certifying Plaintiff as the representative of the Classes defined herein.

B.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, including (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendants to protect all data collected or received through the course of their business in accordance with applicable regulations, other federal, state and local laws, and best practices under industry standards; (iii) requiring Defendants to design, maintain, and test their computer systems to ensure that Sensitive Information in their possession is adequately secured and protected; (iv) requiring Defendants to disclose any future data breaches in a timely and accurate manner; (v) requiring Defendants to engage third-party security auditors as well as internal security personnel to conduct testing, and ordering them to promptly correct any problems or issues

28

detected by these auditors; (vi) requiring 21st Century to segment data by, among other things, creating firewalls and access controls so that if one area of the 21st Century network is compromised, hackers cannot gain access to other portions of 21st Century's systems; (vii) requiring Defendants to purge, delete, and destroy in a reasonably secure and timely manner Sensitive Information no longer necessary for their provision of services; (viii) requiring Defendants to conduct regular database scanning and securing checks; (ix) requiring Defendants to provide lifetime credit monitoring and identity theft repair services to members of the Classes; and (x) requiring Defendants to educate all Class Members about the threats they face as a result of the loss of their Sensitive Information to third parties, as well as steps Class Members must take to protect themselves.

C.      Awarding Plaintiff and the Classes such damages, including actual damages, punitive damages, treble damages, statutory damages, and exemplary damages, as permitted or provided for under federal and state laws.

D.      Ordering restitution to Plaintiff and the Class Members and disgorgement of monies and profits from Defendants.

## JURY DEMAND

Plaintiff demand a trial by jury on all issues so triable as a matter of right.

Dated: March 21, 2016

Respectfully submitted,

TRIAL COUNSEL

HARRIS LAW FIRM, P.A.

David Hughes Harris, Esq.
FBN 0118850
8695 College Parkway, Suite 1350
Fort Myers FL 33919
T 239-985-4240
F 239-236-0940
E david@harrisjustice.com

*Attorneys for Plaintiff and Proposed Classes*